# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS<br>ELEVENTH JUDICIAL CIRCUIT |
| COUNTY OF SALUDA | C/A No.: 2025-CP-41-00007 |
| Saluda County Water & Sewer Authority,<br><br>Plaintiff,<br><br>vs.<br><br>3M Company, Inc.; Daikin America, Inc.; Du Pont de Nemours, Inc.; E.I. DuPont de Nemours, Inc.; EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company; Corteva, Inc.; The Chemours Company; The Chemours Company FC, LLC; Ascend Performance Materials, Inc.; Ascend Performance Materials Operations, LLC; Burlington Industries, Inc.; Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation; CompX, LLC; CompX Security Products, Inc. CPJ Technologies, Inc.; Jain-Chem, Ltd.; Ulterion International, LLC; Ulterion International Exports II, Inc.; Masha, LLC; DayStrong Rubber Products, LLC; Elevate Textiles, Inc. f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc.; FUJIFILM Holdings America Corporation; FUJIFILM Manufacturing U.S.A., Inc.; Milliken & Company; QualaWash Holdings, LLC; Roll Technology Corporation f/k/a Carolina Plating Company; Safety Components Fabric Technologies, Inc.; Shaw Industries Group, Inc.; Solvay Specialty Polymers USA, LLC; Saint-Gobain Abrasives, Inc.; T & S Brass and Bronze Works, Inc.; Teijin Carbon America, Inc.; Unichem Specialty Chemicals, Inc.; and Unifirst Corporation;<br><br>Defendants. | **SUMMONS**<br>**As to Amended Complaint**<br><br>(Jury Trial Demanded) |

**TO:    THE DEFENDANTS ABOVE NAMED:**

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Amended Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer thereto on the subscriber at the address listed below, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Amended

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Amended Complaint. Any answer that you serve the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

*s/Amy L.B. Hill*
Amy L.B. Hill, SC Bar No.: 68541
William C. Lewis, SC Bar No.: 101287
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
T: 803-281-8150
F: 803-632-8263
amy@richardsonthomas.com
will@richardsonthomas.com

and

Lee T. Patterson
*(pro hac vice admission pending)*
Ethan R. Wright
*(pro hac vice admission pending)*
Carmen V. Paige
*(pro hac vice admission pending)*
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
T: 205-278-7057
F: 205-278-7001
lpatterson@friedman-lawyers.com
ewright@friedman-lawyers.com
cpaige@friedman-lawyers.com

***Attorneys for Plaintiff***

January 13, 2025

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

STATE OF SOUTH CAROLINA

COUNTY OF SALUDA

Saluda County Water & Sewer Authority,

Plaintiff,

vs.

3M Company, Inc.; Daikin America, Inc.; Du Pont de Nemours, Inc.; E.I. DuPont de Nemours, Inc.; EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company; Corteva, Inc.; The Chemours Company; The Chemours Company FC, LLC; Ascend Performance Materials, Inc.; Ascend Performance Materials Operations, LLC; Burlington Industries, Inc.; Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation; CompX, LLC; CompX Security Products, Inc. CPJ Technologies, Inc.; Jain-Chem, Ltd.; Ulterion International, LLC; Ulterion International Exports II, Inc.; Masha, LLC; DayStrong Rubber Products, LLC; Elevate Textiles, Inc. f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc.; FUJIFILM Holdings America Corporation; FUJIFILM Manufacturing U.S.A., Inc.; Milliken & Company; QualaWash Holdings, LLC; Roll Technology Corporation f/k/a Carolina Plating Company; Safety Components Fabric Technologies, Inc.; Shaw Industries Group, Inc.; Solvay Specialty Polymers USA, LLC; Saint-Gobain Abrasives, Inc.; T & S Brass and Bronze Works, Inc.; Teijin Carbon America, Inc.; Unichem Specialty Chemicals, Inc.; and Unifirst Corporation;

Defendants.

IN THE COURT OF COMMON PLEAS
ELEVENTH JUDICIAL CIRCUIT

C/A No.: 2025-CP-41-00007

**AMENDED COMPLAINT**

(Jury Trial Demanded)

Plaintiff Saluda County Water & Sewer Authority ("SCWSA"), by and through the undersigned counsel, brings this action against the following defendants: 3M Company, Inc.; Daikin America, Inc.; DuPont de Nemours, Inc.; E.I. DuPont de Nemours, Inc.; EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company; Corteva, Inc.; The Chemours Company; The Chemours Company FC, LLC; Ascend Performance Materials, Inc.; Ascend Performance Materials

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

Operations, LLC; Burlington Industries, Inc.; Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation; CompX, LLC; CompX Security Products, Inc.; CPJ Technologies, Inc.; Jain-Chem, Ltd.; Ulterion International, LLC; Ulterion International Exports II, Inc.; Masha, LLC; DayStrong Rubber Products, LLC; Elevate Textiles, Inc., f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc., FUJIFILM Holdings America Corporation; FUJIFILM Manufacturing U.S.A., Inc.; Milliken & Company; QualaWash Holdings, LLC; Roll Technology Corporation f/k/a Carolina Plating Company; Safety Components Fabric Technologies, Inc.; Shaw Industries Group; Solvay Specialty Polymers USA, LLC; Saint-Gobain Abrasives, Inc.; T & S Brass and Bronze Works, Inc.; Teijin Carbon America, Inc.; Unichem Specialty Chemicals, Inc.; and Unifirst Corporation (collectively "Defendants").

SCWSA seeks damages related to the release of chemicals that have invaded, contaminated and trespassed into SCWSA's drinking water supply and wastewater, and have caused and will cause SCWSA to incur extensive additional capital and operating expenses in order remove such chemicals from its drinking water and wastewater effluent. SCWSA sets forth in detail the parties, facts, legal claims, and damages with particularity, as follows:

## BACKGROUND

1.    Many of South Carolina's textile manufacturers have used a family of chemicals, referred to as "PFAS"[1] or "forever chemicals," to impart stain resistant and non-stick properties to

---

[1] Unless otherwise delineated, the term "PFAS" or "PFAS Chemicals" in this Complaint refers to any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to), collectively, related chemicals that degrade to PFAS/PFOA/PFOS, and any precursors to PFAS/PFOA/PFOS, including, but not limited to, PFOA, PFOS, Gen-X, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

textiles. PFAS is also commonly used in metal finishing, paper finishing, plastics coating, and aerospace industries, among others, for the ability to repel water, dirt, and oil, among other things.

2.     SCWSA relies on the water from Lake Murray, a Saluda River impoundment, as its primary source of drinking water.  Lake Murray contains PFAS in concentrations in excess of what the Environmental Protection Agency ("EPA") now considers safe. SCWSA relies on the water from Lake Murray to provide up to 6 million gallons of drinking water per day.

3.     PFAS do not break down in the environment, and are known to be bio-persistent, bio-accumulative, and toxic. PFAS are an endocrine disruptor which can cause an array of adverse health effects, including various cancers and birth defects, among other things.

4.     Defendants, at all times relevant to this Complaint, have manufactured, sold, used and/or caused the unauthorized discharge of PFAS into Lake Murray, from which SCWSA sources its drinking water.

5.     PFAS are self-propelled and highly mobile once released into the environment.

6.     Defendants' PFAS enter the environment via several different pathways: direct discharge from an industrial point source; "pass through" contamination from wastewater or leachate containing PFAS introduced into conventional wastewater treatment plants incapable of removing PFAS prior to discharge; and groundwater contamination from manufacturing facilities.

7.     The unique properties of PFAS make them resistant to conventional water and wastewater treatment.  The Defendants knew or should have known for decades that PFAS resist conventional water and wastewater treatment technologies and that improper instruction with regard to handling PFAS waste would result in widespread PFAS contamination.

--------

(1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, and NFDHA.  It is SCWSA's intention that this definition is as broad, expansive, and inclusive as possible.

3

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

8.     PFAS may only be removed from water and wastewater using sophisticated treatment technologies such as reverse osmosis ("RO") or granulated activated carbon ("GAC"). Nonetheless, Defendants continued to manufacture, use, discharge, inadequately warn, and improperly dispose of PFAS either directly or indirectly through conventional wastewater treatment plants upstream of where SCWSA draws its drinking water, thus adversely impacting both SCWSA's drinking water and its wastewater.

9.     Recently, the EPA announced heightened regulations for certain PFAS. The new maximum contaminant level ("MCL") mandates that the two primary types of PFAS, PFOA and PFOS, shall not exceed four parts per trillion ("ppt") in public drinking water. The EPA has also implemented a 10 ppt standard for commonly used "short chain" PFAS compounds: PFHxS, PFNA, and HFPO-DA. Additionally, the MCL contains a "Hazard Index" which regulates other commonly used PFAS chemicals as a group according to combined toxicity.

10.    In addition to the binding MCLs and Hazard Index for these PFAS, the EPA has also established a Maximum Contaminant Level Goal ("MCLG") of 0.0 ppt for PFOS and PFOA—meaning that there is no level of PFOS or PFOS "at which no known or anticipated adverse effects on the health of persons" may occur.

11.    As it stands, SCWSA currently utilizes legacy water treatment technology which features a chlorine disinfectant process, which is not capable of removing PFAS from source water or wastewater.  Through no fault of its own, SCWSA must upgrade its facilities to adequately address Defendants' PFAS, remain in compliance with federal and state regulations, and meet its duty of providing safe and clean drinking water to its ratepayers.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

12.    SCWSA will be forced to incur substantially increased capital and operating expenses related to PFAS removal from drinking water and wastewater. SCWSA seeks compensation from Defendants for these PFAS-related expenses.

## PARTIES

### I. Plaintiff Saluda County Water and Sewer Authority

13.    Plaintiff Saluda County Water and Sewer Authority ("SCWSA") is a division of Saluda County, South Carolina, and is a public water and sewer utility organized under the laws of the State of South Carolina, which operates various departments to enhance the health, safety, and general well-being of its citizens.

14.    SCWSA, among other responsibilities, provides drinking water to its customers both retail and wholesale.

15.    SCWSA obtains untreated raw water primarily from Lake Murray. The present capacity allows for the filtration of up to 4 million gallons per day of raw water, but SCWSA is in the process of installing 2 new pumps to bring its filtration capacity to 6 million gallons of water per day in the next month or two.

16.    Drinking water is processed by SCWSA's water filtration plant and delivered to customers through the potable water distribution system.

17.    SCWSA's Water Treatment Plant is located at 581 Shealy Road, Leesville, South Carolina 29070 and draws water from Lake Murray. SCWSA's Water Treatment Plant has a rated capacity to produce 6 million gallons of drinking water per day.

18.    In addition to treating and providing drinking water through its Water Treatment Plant, SCWSA also owns and operates a Wastewater Treatment Plant located at 428 North Bouknight Ferry Road, Saluda, South Carolina 29138.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

19.     SCWSA's Wastewater Treatment Plant utilizes conventional treatment technology that is incapable of removing Defendants' PFAS prior to discharge. SCWSA will incur additional expenses in order to treat its wastewater for PFAS.

20.     At all times relevant hereto, SCWSA has suffered substantial damage to its property and property interests.

21.     Because PFAS are resistant to conventional treatment technology, SCWSA's water and wastewater treatment facilities must be upgraded to remove Defendants' PFAS to levels deemed safe by the Federal Government.

22.     SCWSA has been and continues to be damaged due to the negligent, willful, and wanton conduct of the Defendants, as well as the continuous nuisance and trespass caused by Defendants' past and present manufacture, use, purchase, sale, supply, discharge, and release of PFAS into its water and wastewater.

23.     As a direct and proximate result of Defendants' conduct, SCWSA has suffered, and will continue to suffer, substantial economic and consequential damage, including but not limited to: past and future expenses associated with the testing and monitoring of PFAS contamination levels in SCWSA's raw water and drinking water; past and future expenses associated with testing, monitoring, and installing temporary emergency filtration and pumping systems; pilot program costs associated with permanent filtration systems capable of removing Defendants' PFAS from SCWSA's drinking water and wastewater; costs associated with remediating SCWSA's existing treatment and pumping facilities; damage to goodwill and reputation; and lost revenues and sales. In addition, SCWSA seeks past, present, and future engineering, operating, and maintenance costs.

24.     SCWSA seeks compensatory and punitive damages to the fullest extent allowed by South Carolina law. This includes but is not limited to compensatory damages to upgrade

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

SCWSA's water and wastewater treatment technology to be able to remove all PFAS from drinking water and wastewater, filtration equipment, piping, and other necessary infrastructure. SCWSA also seeks damages for increased operational expenses associated with the operation of these facilities, such as increased electrical expenses, staffing expenses, and proper disposal of any associated byproducts related to PFAS treatment.

## II. Defendants

### A. PFAS Manufacturers[2]

25.     **3M Company, Inc. ("3M")** is a foreign corporation organized under the laws of the State of Delaware and is registered to transact business in the State of South Carolina. 3M has operated facilities at multiple locations in South Carolina and currently operates a plant in Greenville, South Carolina. 3M has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by 3M is currently contaminating SCWSA's drinking water and wastewater. As a result, 3M is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

26.     **Daikin America, Inc. ("Daikin")** is a foreign corporation organized under the laws of the State of Delaware, headquartered in Orangeburg, New York, and is conducting business in the State of South Carolina. Upon information and belief, Daikin is a wholly owned subsidiary of Daikin Industries Ltd. Daikin has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by Daikin is currently contaminating SCWSA's

---

[2] The Defendants described in this Section are all collectively referred to as "PFAS Manufacturers."

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

drinking water and wastewater. As a result, Daikin is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

27.     **DuPont de Nemours, Inc.**[3] (**"DuPont"**) is a foreign corporation organized under the laws of the State of Delaware and authorized to transact business in the State of South Carolina. DuPont has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by DuPont is currently contaminating SCWSA's drinking water and wastewater. As a result, DuPont is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

28.     **E.I. du Pont de Nemours, Inc. ("E.I. du Pont")** is a foreign corporation organized under the laws of the State of Delaware and authorized to transact business in the State of South Carolina. E.I. du Pont has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by E.I. du Pont is currently contaminating SCWSA's drinking water and wastewater. As a result, E.I. du Pont is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

29.     **EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company ("EIDP")** is a foreign corporation organized under the laws of the State of Delaware and authorized to transact business in the State of South Carolina. EIDP has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by EIDP is currently contaminating SCWSA's

---

[3] DuPont de Nemours, Inc., Du Pont de Nemours, Inc., E.I. DuPont de Nemour, Inc., EIDP, Inc., and Corteva, Inc., The Chemours Company, and The Chemours Company FC, LLC are collectively referred to as "DuPont."

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

drinking water and wastewater. As a result, EIDP is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

30.     **Corteva, Inc. ("Corteva")** was a foreign corporation organized under the laws of the State of Delaware and was previously authorized to transact business in the State of South Carolina. Corteva has manufactured, sold, used and/or transported PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by Corteva is currently contaminating SCWSA's drinking water and wastewater. As a result, Corteva is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

31.     **The Chemours Company ("Chemours")** is a foreign corporation organized under the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. Chemours has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by Chemours is currently contaminating SCWSA's drinking water and wastewater. As a result, Chemours is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

32.     **The Chemours Company FC, LLC ("Chemours FC")** is a foreign corporation organized under the laws of the State of Delaware and authorized to transact business in the State of South Carolina. Chemours FC has and continues to manufacture, sell, use and/or transport PFAS and PFAS related products or products that degrade PFAS into South Carolina. PFAS manufactured, sold, used, and/or transported by Chemours FC is currently contaminating SCWSA's drinking water and wastewater. As a result, Chemours FC is causing and contributing to a continuous nuisance, trespass, and injury to SCWSA in Saluda County, South Carolina.

9

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

### B. PFAS Users[4]

33.     **Ascend Performance Materials, Inc. ("Ascend")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Ascend Performance Materials Inc. is the parent company of Ascend Performance Materials Operations, LLC, which owns and operates a manufacturing plant in Greenwood, South Carolina, on the banks of Lake Greenwood.  Ascend Performance Materials, Inc. and Ascend Performance Materials Operations, LLC are collectively referred to as the "Ascend Defendants." Ascend has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Ascend continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

34.     **Ascend Performance Materials Operations, LLC ("Ascend Operations")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Ascend Operations owns and operates a manufacturing plant located at 1515 Hwy 246 S, Ninety Six, Greenwood, South Carolina, on the banks of Lake Greenwood. Ascend has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Ascend Operations continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

35.     **Burlington Industries, Inc. ("Burlington")** was organized under the laws of the State of Delaware and was previously authorized to do business in the State of South Carolina. Burlington owned and operated textile mills which discharged wastewater containing PFAS upstream from where SCWSA draws its drinking water.  Upon information and belief, biosolids

---

[4] The list of defendants in this section are all collectively referred to as "PFAS Users."

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

from these plants and treatment plants which accepted contaminated wastewater from Burlington were also land-applied in areas that resulted in run off into Lake Murray or related tributaries, which further have contributed to the PFAS contamination of Lake Murray upstream from SCWSA's raw water intake. Due to the persistent nature of PFAS, wastewater discharged by Burlington during its operations continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water supply in Saluda County, South Carolina. Burlington is currently in bankruptcy, but attorney Peter McCoy, a Charleston County, South Carolina resident, has been appointed as receiver for Burlington in a matter pending in Saluda County, South Carolina. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022).

36. **Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation ("Cintas")** is a foreign corporation organized under the laws of the State of Nevada and is authorized to do business in the State of South Carolina. Cintas has locations throughout South Carolina. Cintas has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Cintas continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

37. **CompX, LLC ("CompX")** is a domestic limited liability company organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina. CompX has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, CompX continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

11

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

38.    **CompX Security Products, Inc. ("CompX Securities")** is an entity organized pursuant to the laws of Delaware and is authorized to do business in South Carolina. CompX Securities has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and, as a result, CompX Securities continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

39.    **CPJ Technologies, Inc., Jain-Chem, Ltd., Ulterion International, LLC, Ulterion International Exports II, Inc., and Masha, LLC (collectively "CPJ")** are all domestic entities organized under the laws of South Carolina and authorized to do business in the State of South Carolina. The CPJ Defendants all appear to be chemical manufacturers operating from the same location – 200 Tanner Drive Taylors, South Carolina. CPJ has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, CPJ continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

40.    **DayStrong Rubber Products, LLC ("DayStrong")** is a domestic limited liability company organized under the laws of South Carolina and is authorized to do business in the State of South Carolina. DayStrong operates a plant or manufacturing location in South Carolina. DayStrong has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, DayStrong continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

41.    **Elevate Textiles, Inc. ("Elevate") f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc.** is a foreign corporation organized under the laws of

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

Delaware and is authorized to transact business in the State of South Carolina. Elevate is the current owner and operator of Burlington, which has discharged and continues to discharge wastewater containing PFAS upstream from where SCWSA draws its drinking water. Due to the persistent nature of PFAS chemicals, PFAS discharged by Elevate and its predecessor interests continue to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

42.     **FUJIFILM Holdings America Corporation ("FUJIFILM Americas")** is a foreign corporation organized under the laws of Delaware and is authorized to do business in the State of South Carolina. Fujifilm Americas is the parent company of Defendant FUJIFILM Manufacturing U.S.A., Inc, ("Fujifilm Manufacturing" and with Fujifilm Americas collectively "Fujifilm Defendants") which owns and operates a manufacturing facility located at 211 Puckett Ferry Rd, Greenwood, SC 29649 on the banks of Lake Greenwood. FUJIFILM Americas has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, FUJIFILM Americas continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

43.     **FUJIFILM Manufacturing U.S.A., Inc.  ("FUJIFILM Manufacturing")** and with Fujifilm Americas collectively "Fujifilm Defendants") is a domestic corporation organized under the laws of the State of South Carolina and is authorized to transact business in the State of South Carolina. FUJIFILM Manufacturing owns and operates a manufacturing facility located at 211 Puckett Ferry Rd, Greenwood, SC 29649 on the banks of Lake Greenwood.   FUJIFILM Manufacturing has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, FUJIFILM Manufacturing continues to invade,

13

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

44.     **Milliken & Company ("Milliken")** is a global company incorporated in Delaware but formed in South Carolina with its headquarters and principal place of business located in Spartanburg, South Carolina.  Milliken has been registered to do business in South Carolina since 1949.  Milliken has owned and continues to own and operate many facilities which have discharged PFAS waste upstream of SCWSA's drinking water intakes.  Milliken operates a plant or manufacturing location in South Carolina.  Milliken has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Milliken continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

45.     **QualaWash Holdings, LLC ("QualaWash")** is a foreign limited liability company organized under the laws of Florida and is authorized to transact business in the State of South Carolina.  QualaWash has multiple locations in South Carolina.  QualaWash operates a plant or manufacturing location in South Carolina.  QualaWash has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, QualaWash continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

46.     **Roll Technology Corporation f/k/a Carolina Plating Company, Inc. ("Roll Tech")** is a domestic corporation organized under the laws of the State of South Carolina and is authorized to transact business in the State of South Carolina.  Roll Tech operates a plant or manufacturing location in South Carolina.  Roll Tech has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Roll Tech

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

47.     **Safety Components Fabric Technologies, Inc. ("Safety Components")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Safety Components operates a manufacturing location in South Carolina. Safety Components has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Safety Components continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

48.     **Shaw Industries Group, Inc. ("Shaw")** is a foreign corporation organized under the laws of Georgia and is authorized to transact business in the State of South Carolina. Shaw operates a manufacturing location in South Carolina. Shaw has discharged and continues to discharge wastewater containing PFAS in and around the Lake Murray watershed, which SCWSA relies on for water, and as a result, Shaw continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

49.     **Solvay Specialty Polymers USA, LLC ("Solvay")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Solvay operates multiple locations in South Carolina. Solvay has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Solvay continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

50.     **Saint-Gobain Abrasives, Inc. ("Saint-Gobain")** is a foreign corporation organized under the laws of Massachusetts and is authorized to transact business in the State of

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

South Carolina. Saint-Gobain has at least one location in South Carolina. Saint-Gobain has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Saint-Gobain continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

51.     **T & S Brass and Bronze Works, Inc. ("T & S")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. T&S has its principal place of business and headquarters in South Carolina. T & S has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, T & S continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

52.     **Teijin Carbon America, Inc. ("Teijin")** is a foreign corporation organized under the laws of Delaware and is authorized to transact business in South Carolina. Teijin owns and operates a manufacturing facility located at 1122 Highway 246 in Greenwood, South Carolina on the banks of Lake Greenwood. Teijin has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Teijin continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

53.     **Unichem Specialty Chemicals, Inc. ("Unichem")** is a foreign limited liability company organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Unichem operates a location in South Carolina. Unichem has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water and as a result, Unichem continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

54.     **Unifirst Corporation ("Unifirst")** is a foreign corporation organized under the laws of Massachusetts and is authorized to transact business in the State of South Carolina. Unifirst operates multiple locations in South Carolina.  Unifirst has discharged and continues to discharge wastewater containing PFAS upstream of where SCWSA draws water, and as a result, Unifirst continues to invade, trespass, injure, and create a nuisance by entering SCWSA's drinking water and wastewater in Saluda County, South Carolina.

### DISCLAIMER

55.     This lawsuit is brought under the laws of the State of South Carolina. SCWSA asserts no federal cause of action, invokes no federal statutes and seeks no relief that is based on any federal statute or laws.

56.     Any federal claims are expressly disclaimed by SCWSA.

57.     SCWSA makes no claim, and asserts no cause of action, to implicate that the manufacture, sale, or use of AFFF in any way caused or contributed to cause the damages, or the claims, asserted in this lawsuit.  SCWSA expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendant, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF." SCWSA expressly disclaims any potential claims arguably arising from any federal enclaves, including any military installations or other locations that may have used AFFF pursuant to military specifications. This case is brought against the Defendants in their capacities as private manufacturers and users of PFAS.

58.     SCWSA makes no claim, and asserts no cause of action, against any upstream publicly owned wastewater treatment plants.

17

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

## NO CLASS ACTION PARTICIPATION

59.     Several Defendants in this case have been sued in other cases involving allegations of PFAS pollution to public water systems. In 2023, 3M and DuPont settled nationwide, multi-district, class-action claims related to the contamination of public water supplies with PFAS for approximately $10 billion and $1 billion, respectively. S*ee In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) ("*AFFF Litigation*").

60.     Prospective class members in the *AFFF Litigation* had the option of "opting out" of the 3M and DuPont settlements in order to pursue individual lawsuits against 3M and DuPont. SCWSA validly and timely exercised its right to "opt out" of the *AFFF Litigation* Class Action Settlements with 3M and DuPont in order to pursue their claims in this lawsuit. SCWSA has received confirmation from the Notice Administrator overseeing these settlements that it's opt-outs were in fact "compliant."

61.     Judge Richard Gergel, the United States District Court Judge for the District of South Carolina overseeing the *AFFF Litigation*, ultimately entered orders of final approval on the 3M and DuPont settlements. At no time has 3M, DuPont, or any other party raised objections to SCWSA's decision to opt-out from the class settlements.

## JURISDICTION AND VENUE

62.     This lawsuit is brought under the laws of South Carolina. SCWSA asserts no federal causes of action, invokes no federal statutes and seeks no relief that is based on any federal statute or laws. Any federal claims are expressly disclaimed.

63.     Complete diversity does not exist between SCWSA and all Defendants. This case arises out of the manufacture, supply, use, and disposal of PFAS in the carpet, textile, chemical, finishing, and other related industries, as well as the improper disposal of leachate and/or

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

wastewater containing PFAS. SCWSA makes no claim that the manufacture or use of AFFF in any way caused or contributed to their damages or the claims asserted in this lawsuit, and in fact, expressly disclaims any damages arising from AFFF or MilSpec AFFF.

64.     Venue is proper in this Court pursuant to S.C. Code Sections 15-7-20(1) and 15-7-30(F)(1) as the most substantial part of the alleged act or omission, the contamination of SCWSA's drinking water and wastewater systems by Defendants' chemicals occurred in Saluda County, South Carolina.

## FACTUAL ALLEGATIONS

**I.  Manufacturing Defendants Have Known, and PFAS Users Should Have Known for Decades that PFAS are a Threat to Human Health and the Environment.**

65.     PFAS are man-made, synthetic chemicals used to impart oil-, water-, and stain resistance to various products, including carpet, paper, and textiles. The same chemical properties that provide enhanced soil-resistant attributes also make PFAS resistant to degradation and persistent in the environment.

66.     PFAS are known to the EPA and the Defendants as "forever chemicals" because these man-made chemicals persist in the environment for extremely prolonged periods and do not degrade like other chemicals. PFAS accumulate in the human body through the process of bioaccumulation. In fish and mammals, PFAS accumulate, build, and increase though biomagnification.

67.     PFAS also migrate through surface water and groundwater, allowing PFAS compounds to travel long distances while causing extensive contamination.

68.     Since PFAS do not degrade naturally and are synthetic "forever chemicals," PFAS released into the environment decades ago will remain present and will continue causing pollution that is a threat to public health, unless removed by very specific, sophisticated filtration methods.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

69.     Although there are thousands of chemical substances that fall under the PFAS umbrella, the two most notorious PFAS chemicals are perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

70.     PFOS and PFOA are considered "long-chain" PFAS (sometimes referred to as "C-8" chemistries), because they contain eight (8) fluorinated carbon atoms. Defendants knew that, because of the strong carbon-fluorine bond, PFOS and PFOA do not degrade naturally in the environment.

71.     According to the EPA, 3M was the sole manufacturer of PFOS in the United States and the principal manufacturer of PFOS worldwide. Upon information and belief, 3M supplied PFOS and/or products containing or degrading into PFOS to the PFAS Users for use in their manufacturing processes.

72.     The PFAS Manufacturers all manufactured PFOA and/or products containing or degrading into PFOA. Upon information and belief, DuPont, Daikin, and 3M supplied PFOA and/or products containing or degrading into PFOA to the PFAS Users for use in their manufacturing processes.

73.     3M and DuPont began studying the toxicity of PFOS and PFOA as early as the 1950s and 1960s.

74.     By the 1970s, 3M and DuPont were aware that their products persisted indefinitely in the environment. 3M also knew at this time that its C-8 products were present in the blood of the general population.

75.     In the 1970s and 1980s, 3M began conducting animal studies to determine the possible carcinogenicity of PFAS chemicals. One such study, an investigation into the effects of PFOS on rhesus monkeys, had to be aborted prior to the conclusion of the study "[b]ecause of

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

unexpected early mortalities in all monkeys at all levels" of PFOS dosage. In 1978, a 3M interoffice correspondence concluded that "[r]ecent animal studies have shown that FC-95 [PFOS] is more toxic than was previously believed."

76.     By the 1980s and 1990s, 3M and DuPont were fully aware that PFOS and PFOA were toxic and persistent in the environment and that conventional treatment methods were ineffective at removing these pollutants. Nevertheless, the two companies actively hid their findings from regulators and the general public. In 1988, a 3M internal memo raised concerns that 3M had "perpetuate[d] the myth that these fluorochemical surfactants are biodegradable."

77.     In 1997, 3M prepared a Material Safety Data Sheet ("MSDS") for a product containing PFAS. The MSDS contained the following warning:

> **CANCER:**
>     **WARNING: Contains a chemical which can cause cancer. (3825-26-1)**
>     **(1983 and 1993 studies conducted jointly by 3M and DuPont).**

78.     This warning was removed from subsequent MSDSs.

79.     In the late 1990s, 3M began a comprehensive, multi-city investigation into the extent of its PFAS pollution.

80.     3M also concluded during this investigation that reverse osmosis is the only treatment method capable of removing all PFAS.

81.     In 1999, Richard Purdy, one of 3M's lead scientists on the multi-city study, resigned from his position due to his "profound disappointment in 3M's handling of the environmental risks associated with the manufacture and use of perfluorinated sulfonates (PFOS) . . . and its precursors." *See* Purdy Letter dated March 28, 1999.

82.     Mr. Purdy's letter, which was also sent to a representative of the EPA, further stated that PFOS "is the most insidious pollutant since PCB" and "more stable than many rocks." *Id.*

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

83.     Following Mr. Purdy's letter, the EPA began an investigation into PFOS after receiving data that "PFOS was persistent, unexpectedly toxic, and bioaccumulative (PBT)." Federal Register/Vol. 68, 2003.

84.     During its subsequent investigation of 3M, the EPA disclosed that "following negotiations with EPA, 3M . . . announced that it will voluntarily phase out perfluorooctanyl sulfonate ("PFOS") chemistry." The EPA determined that PFOS was toxic and accumulated to a high degree in humans and animals. The EPA's preliminary risk assessment found unacceptable margins of exposure for workers and possibly the general population exposed to PFOS.

85.     The EPA concluded that "PFOS represents an unacceptable technology that should be eliminated to protect human health and the environment from potentially severe long-term consequences." Shortly thereafter, the EPA expanded its investigation to perfluorooctanoic acid (PFOA), stating the "EPA was concerned in part because 3M had also found PFOA in human blood during the studies on PFOS."

86.     Despite the fact that 3M announced that it was withdrawing PFOS and PFOA from the market in 2000, DuPont and Daikin continued to manufacture and/or use PFOA with full knowledge that these substances had been withdrawn by 3M due to environmental and potential health risks to the public.

87.     Upon information and belief, the PFAS Users continued to purchase, use, and discharge PFOA and products containing or degrading into PFOA despite the fact that 3M had withdrawn from the PFOS and PFOA markets due to potential environmental risks and health risks to the public.

88.     In 2005, DuPont paid $10.25 million—the largest civil administrative penalty ever obtained by the EPA under any federal environmental statute—to settle claims brought by the EPA

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

alleging that DuPont withheld information concerning PFOA in violation of the Toxic Substances Control Act ("TSCA") and the Resource Conservation and Recovery Act ("RCRA").

89.     In 2006, 3M paid $1.5 million to settle claims brought by the EPA alleging that 3M violated TSCA by failing to disclose information concerning PFOS.

90.     By 2006, the majority of an EPA Science Advisory Board expert committee had recommended that PFOA be considered "likely to be carcinogenic to humans." Similarly, an independent C-8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure, based on epidemiological and other data in the Mid-Ohio Valley.

91.     All of the Defendants knew or should have known that PFOS and PFOA are persistent and bioaccumulative.  All of the Defendants knew or should have known that conventional wastewater and drinking water treatment systems are incapable of removing PFOS and PFOA from water supplies. Nevertheless, the Defendants in this case supplied, used, purchased, and/or accepted PFOS and PFOA, and/or products containing or degrading into PFOS and PFOA, without using adequate care to prevent the contamination of SCWSA's water supply.

92.     PFOS and PFOA manufactured, used, and discharged by the Defendants are still present at dangerously high levels in Lake Murray, SCWSA's drinking water supply.  Many of these Defendants are still discharging wastewater, leachate, stormwater, and other types of wastewater containing PFOS and PFOA, or precursors of PFOS and PFOA, upstream of SCWSA's drinking water intake.

93.     Defendants have operated in the past, and/or are currently operating, manufacturing facilities related to PFAS and products that contain or degrade into PFAS. The PFAS Manufacturers use PFAS as part of their manufacturing processes or otherwise supply PFAS or products that contain or degrade into PFAS to various industries.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

94.     PFAS, and products that contain or degrade into PFAS, are manufactured, and sold by the PFAS manufacturers to PFAS Users.  In many instances, the PFAS Manufacturers controlled the PFAS Users' application and use of PFAS-containing products.  These products are subsequently discharged both directly and indirectly into Lake Murray, as well as other tributaries and watersheds that ultimately discharge into Lake Murray upstream of Joint Municipal's drinking water intake in Saluda County, South Carolina.

95.     Because PFAS continues to invade SCWSA's drinking water and wastewater, PFAS Manufacturers and PFAS Users have caused and contributed, and are still causing and contributing to, a continuous nuisance and trespass through their past and present manufacture, use, purchase, sale, supply, discharge, and/or release of PFAS and products that contain or degrade into PFAS.

**II. "Short-Chain" PFAS**

96.     After 3M phased out "long-chain" PFAS, it began selling "short-chain" PFAS compounds (sometimes referred to as "C-6" and "C-4" chemistries), and/or products that contained or degraded into "short-chain" PFAS, to the PFAS Users.  DuPont and Daikin eventually converted to "short-chain" PFAS as well.  The PFAS Manufacturers knew that these "short-chain" products actually contained "long-chain" PFAS as an impurity, or otherwise contained precursor compounds that would degrade into long-chain PFAS.

97.     The "short-chain" PFAS compounds sold and/or used by the PFAS Manufacturers included and/or degraded into PFBS, PFBA, PFHxA, PFPeA, Gen-X, and more.

98.     Defendants knew or should have known that these "short-chain" PFAS compounds were just as toxic, persistent, and bioaccumulative as their "long-chain" predecessors. Defendants also knew or should have known that conventional wastewater and drinking water treatment systems are incapable of removing "short-chain" PFAS from water supplies. Nevertheless,

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

Defendants supplied, used, purchased, and/or accepted "short-chain" PFAS, and/or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of SCWSA's water supply.

99.     Upon information and belief, Defendants continue to supply, use, purchase, accept, and/or discharge "short-chain" PFAS, and/or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of SCWSA's water supply or wastewater effluent, to this day.

**III.  PFAS Regulations**

100.     In 2009, the EPA issued a Provisional Health Advisory for drinking water setting advisory levels of 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS in drinking water.

101.     In May of 2016, EPA published a Lifetime Health Advisory for drinking water setting the levels at 70 ppt *combined* for PFOA and PFOS. This Health Advisory was based on "studies of the effects of PFOA and PFOS on laboratory animals" and "epidemiological studies to human populations" which "indicate that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."

102.     In 2022, EPA updated the 2016 Health Advisory for PFOS and PFOA in drinking water, dramatically lowering the recommended limits to .02 ppt for PFOS and .004 ppt for PFOA. The EPA also set levels for two "short-chain" PFAS: PFBS and Gen-X.

103.     In March 2023, EPA proposed a National Primary Drinking Water Regulation ("NPDWR") to establish legally enforceable Maximum Contaminant Levels ("MCLs") for six

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

PFAS in drinking water: PFOA, PFOS, PFBS, PFNA, PFHxS, and Gen-X). The EPA finalized the NPDWR in April 2024.

104.    Under the NPDWR, public water systems, like SCWSA, will be required to provide drinking water with no more than 4 ppt PFOS and 4 ppt PFOA.

105.    Moreover, the NPDWR will require that public water systems, like SCWSA, remove PFBS, PFNA, PFHxS, and Gen-X from their drinking water pursuant to a Hazard Index. Under this Hazard Index, *combined* concentrations of these compounds may additionally constitute a violation even where each individual compound is lower than the MCL.

106.    In announcing the new MCLs, EPA stated that it "expects that over many years the final rule will prevent PFAS exposure in drinking water for approximately 100 million people, prevent thousands of deaths, and reduce tens of thousands of serious PFAS attributable illnesses."

107.    Pursuant to the NPDWR, EPA also proposed "health-based" Maximum Contaminant Level Goals ("MCLGs") for PFOS and PFOA at zero ppt.

108.    The EPA explained the decision-making process behind its proposed MCLGs: "Following a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe."

109.    Finally, on April 19, 2024, the EPA formally designated PFOS and PFOA as Hazardous Substances under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").   According to the EPA, the designation of PFOS and PFOA as Hazardous Substances under CERCLA is designed to ensure that those responsible for the contamination pay to clean it up.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

## IV.  PFAS POLLUTION IN AND AROUND THE LAKE MURRAY WATERSHED.

110.    SCWSA relies on water from Lake Murray.

111.    Lake Murray contains elevated levels of PFAS as a result of Defendants' past and present manufacture and/or discharge of PFAS.

112.    Because of their persistence and bioaccumulation, PFAS discharged into Lake Murray and its tributaries decades ago are still present in SCWSA's water supply and continue to impact SCWSA's ability to provide clean drinking water to its water customers.

113.    These "forever chemicals" will continue to pollute SCWSA's water supply for generations to come and will be present in SCWSA's drinking water in excess of the applicable federal standards until they are removed through very sophisticated filtration methods.

114.    In addition to wastewater containing PFAS directly discharged into Lake Murray, Defendants knew or should have known that PFAS cannot be removed by conventional wastewater treatment methods, and that the Defendants' wastewater containing PFAS passes directly through upstream wastewater treatment systems and back into Lake Murray and its tributaries, upstream of SCWSA's drinking water intake on Lake Murray in Saluda County, South Carolina.

115.    In addition to discharging PFAS into Lake Murray and its tributaries directly and indirectly through industrial wastewater discharges to local wastewater treatment plants, some Defendants have also engaged in the land application of sludge containing PFAS, which has further exacerbated PFAS contamination in Lake Murray basin.

116.    As a result of Defendants' manufacture, use, disposal, and discharge of PFAS and/or products and waste that contain or degrade into PFAS, dangerously elevated levels of PFAS have been detected in Lake Murray and its related tributaries and watersheds. The levels of PFAS

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

detected far exceed EPA's most recent Health Advisory, Maximum Contaminant Levels, and Maximum Contaminant Level Goals.

117.     South Carolina's Department of Health and Environmental Control ("DHEC") performed extensive sampling as part of its Ambient Surface Water PFAS Study.[5]  Sampling reveals significant PFAS detections downstream of Defendants facilities and upstream of SCWSA's drinking water intakes in concentrations that exceed 4 ppt for PFOA and PFOS.

118.     The levels of PFAS in SCWSA's finished water detected exceed EPA's most recent Health Advisory and Maximum Contaminant Levels ("MCL") and Maximum Contaminant Level Goals ("MCLG").

119.     Because SCWSA's water treatment plant, like most conventional water treatment plants in the country, are incapable of removing PFAS, SCWSA's raw and finished water both contain levels of "forever chemicals" exceeding that which is allowed by EPA under the 2022 Health Advisory and the new MCLs.

120.     Now, through no fault of its own, SCWSA will be responsible for the increased costs of removing PFAS in order to meet the standards set by the EPA, comply with South Carolina's Code and State Regulations, including S.C. Code Ann. Regs. § 61-68 *Water Classifications and Standards* and protect public health.

121.     PFAS can only be filtered through the use of costly and sophisticated treatment technology.

122.     SCWSA seeks compensatory damages for filtration equipment, piping, and adequate permanent facilities necessary to operate the filtering systems sufficient to remove PFAS

---

[5]     DHEC's     ambient     surface     water     data     through     is     made     public     at: https://scdhec.gov/environment/polyfluoroalkyl-substances-pfas/pfas-bureau-water (last accessed December 17, 2024).

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

from water relied on by SCWSA for its customers, who in turn rely on SCWSA to provide clean, safe drinking water.

123.    SCWSA also seeks compensatory damages to the fullest extent allowed by South Carolina law for the filtration equipment, piping, and adequate permanent facilities necessary to operate state-of-the-art filtering systems sufficient to remove all PFAS from SCWSA's wastewater prior to release into Lake Murray.

## FOR A FIRST CAUSE OF ACTION
## NEGLIGENCE/GROSS NEGLIGENCE

124.    SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

125.    As manufacturers, users, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, disposers, and/or handlers of PFAS, products containing and/or degrading into PFAS, products manufactured using PFAS, and/or waste containing and/or degrading into PFAS, Defendants owed a duty to SCWSA, in its handling, control, use, and disposal of PFAS so as not to cause harm to SCWSA.

126.    Defendants owed a duty to SCWSA to exercise reasonable care in their manufacturing procedures and waste-handling and disposal operations to prevent the contamination of toxic PFAS chemicals into SCWSA's raw water supply, water treatment plant, wastewater treatment plant, and related property.

127.    Defendants owed a duty to SCWSA and other downstream drinking water systems under the Antidegradation Rules codified at S.C. Code Ann. Regs. 61-68 *Water Classifications and Standards*, to avoid causing or contributing to the discharge of toxic industrial waste that is harmful to human health to surface waters used for drinking water.

29

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

128.    Defendants assumed a duty of due care when they undertook to use PFAS chemicals as described above because Defendants knew or should have known that the PFAS chemicals could contaminate SCWSA's drinking water and its wastewater effluent.

129.    Defendants also voluntarily assumed a duty of reasonable care in their manufacture, sale, purchase, handling, and disposal of PFAS-containing products and/or PFAS-containing waste through their internal corporate policies, permits, and adoption of industry-wide standards.

130.    As described in detail above, Defendants breached their duty to exercise due care and reasonable care owed to SCWSA.

131.    Defendants knew or should have known that their PFAS is persistent in the environment and is bioaccumulative. Defendants also knew or should have known that conventional filtration systems are incapable of removing PFAS from environmental media, and that users including SCWSA would be incapable of removing PFAS from their water supply and wastewater effluent. The PFAS Manufacturers continuously supplied products containing PFAS to the PFAS Users with knowledge that these chemicals would foreseeably contaminate surface waters and downstream water systems—including SCWSA's drinking water and wastewater—in their ordinary and regular use.   Defendants' breaches of their duties to SCWSA constitute negligent, willful, and/or reckless conduct.

132.    SCWSA has a reasonable expectation that Defendants should refrain from or otherwise avoid contaminating SCWSA's source water, facilities, and the surrounding environment, as well as comply with EPA standards and the South Carolina Code and Regulations.

133.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, SCWSA has been damaged and has incurred expenses and will continue

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

to incur expenses in the future in order to remove PFAS from both its drinking water as well as its wastewater treatment.

134.   Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on SCWSA.

135.   Defendants' conduct, practices, and inactions evidence their reckless disregard for SCWSA's water, property, and property interests.

136.   Defendants' conduct should subject them to liability for punitive damages because Defendants' actions were grossly negligent, wanton, willful and careless regarding the contamination of SCWSA's water source and wastewater treatment facilities.

137.   SCWSA is informed and believes it entitled to judgment against Defendants, jointly and severally, for compensatory damages as well as punitive damages.

### FOR A SECOND CAUSE OF ACTION
### CONTINUING NUISANCE

138.   SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

139.   Defendants have created a continuing nuisance by failing to prevent the contamination of SCWSA's water supply and wastewater with PFAS.  As a direct result, SCWSA's drinking water supply, water treatment plants, wastewater treatment plant, and related property are contaminated with PFAS, thereby proximately causing SCWSA interference with its use of the property.

140.   Defendants' manufacture and use of PFAS chemicals for decades constitutes a nuisance that is continuous and ongoing as the PFAS chemicals are continuously contaminating and invading SCWSA's water supply, property, and property interests.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

141.    Each Defendant independently and collectively controlled the cause of the nuisance plaguing SCWSA by causing and contributing to the introduction of harmful pollutants into SCWSA's drinking water and wastewater. In many cases, the PFAS Manufacturers controlled the PFAS Users' application and use of PFAS-containing products.

142.    The contamination of SCWSA's water supply, water treatment plants, wastewater treatment plant, and related property constitutes an unreasonable interference or continuing nuisance, which has caused SCWSA damages that are separate and distinct from those faced by the general public.

143.    SCWSA has suffered damages as a direct result of Defendants' continuing nuisance including but not limited to: past and future expenses associated with installing, maintaining, and operating drinking water treatment systems and associated facilities and equipment capable of removing PFAS; past and future expenses associated with testing and monitoring raw and finished water for the presence of PFAS; and costs associated with remediating SCWSA's existing treatment facilities as necessary to remove PFAS from its water supply.

144.    This nuisance has caused substantial damage and will continue to cause damages until SCWSA receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from SCWSA's water supply and wastewater treatment.

145.    Defendants have acted with a conscious indifference to the probable dangerous consequences of their actions and the reasonably foreseeable impact such actions would have.

146.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, SCWSA has been damaged and has incurred expenses and will continue to incur expenses in the future to remove PFAS from its drinking water.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

147.     Defendants' conduct, practices, and inactions evidence their reckless disregard for SCWSA's water, property, and property interests.

148.     Defendants' conduct subjects them to liability for punitive damages because Defendants' actions were grossly negligent, wanton, willful, and careless regarding the contamination of SCWSA's drinking water source.

149.     SCWSA is informed and believes that it is entitled to judgment against Defendants, jointly and severally, for compensatory damages as well as punitive damages pursuant to Defendants' continuing nuisance.

### FOR A THIRD CAUSE OF ACTION
### PUBLIC NUISANCE

150.     SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

151.     SCWSA owns and occupies property used to serve its water customers, including a water intake, water distribution system, wastewater treatment plant and a water treatment plant, as well as offices, associated facilities, and other equipment.

152.     SCWSA has a property interest in the water it draws from Lake Murray to provide drinking water to its customers.

153.     Defendants have created and contributed to a public nuisance by causing or contributing to cause PFAS chemicals to contaminate Lake Murray, which is a public waterway from which SCWSA collects its drinking water supply. Defendants' contamination of these waterways obstructs and impairs the public's rights to collect clean and safe drinking water.

154.     The continuance and ongoing contamination of Lake Murray at SCWSA's drinking water intake, water treatment plant, and related property constitutes a public nuisance depriving

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

SCWSA of its ability to deliver clean and uncontaminated water and wastewater treatment to its customers.

155.   It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at SCWSA's drinking water intake sites. The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interferes with SCWSA's property rights to appropriate, use, and enjoy water from Lake Murray.

156.   Defendants' public nuisance has caused substantial damages and will continue to cause damages until SCWSA receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from SCWSA's drinking water supply.

157.   Damage to SCWSA's drinking water facilities as well as SCWSA's wastewater treatment facility constitutes special damages.

158.   Defendants committed each of the above-described acts and omissions willfully and with malice, fraud, wantonness, oppression, or lack of the entire want of care which would raise the presumption of conscious indifference to consequences in order to promote sales of their products and/or services. SCWSA therefore demands an award of punitive damages because of the aggravating circumstances alleged herein in order to penalize, punish, and deter Defendants' conduct.

159.   SCWSA is informed and believes that it is entitled to a judgment against Defendants, jointly and severally, for compensatory damages as well as punitive damages, and the costs and legal fees associated with this action.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

## FOR A FOURTH CAUSE OF ACTION
### TRESPASS

160.     SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

161.     SCWSA owns and occupies property used to serve their water customers, including a drinking water intake, a water distribution system, and water treatment plant, as well as offices, associated facilities, and equipment.

162.     SCWSA owns land and water rights which permit them to draw water from Lake Murray to provide drinking water to its customers.  SCWSA has a possessory interest in the water it withdraws from Lake Murray in order to treat and sell to its customers.

163.     Defendants' intentional and voluntary acts in manufacturing, supplying, using, and/or discharging PFAS and/or products and waste containing or degrading into PFAS, with full knowledge that these toxins would contaminate SCWSA's drinking water supply, caused an invasion and damage to SCWSA's property, as well as SCWSA's possessory interest in its property by Defendants' chemicals, which has affected and is affecting SCWSA's interest in the exclusive possession of their property.

164.     Defendants' PFAS chemicals have trespassed into SCWSA's drinking water treatment facility.

165.     SCWSA has at no time consented to the contamination of its water supply or the invasion of its property and possessory interests by Defendants' PFAS chemicals.

166.     Defendants knew or should have known that its manufacture, use, purchase, sale, supply, disposal, discharge, and/or release of PFAS and PFAS-containing products or waste could contaminate SCWSA's water supply and result in an invasion of SCWSA's possessory interest in its property.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

167.     Defendants acted in a wanton fashion with reckless disregard for SCWSA's water, wastewater, rights and property interests.

168.     Defendants' trespass is continuous and ongoing. The contamination resulting from Defendants' trespass has migrated and spread and will continue to migrate and spread.

169.     Defendants' continuing trespass has impaired SCWSA's use of its property and has caused and will cause SCWSA to suffer substantial damages.

170.     Defendants knew or should have known the danger to SCWSA created by Defendants' conduct, practices, actions, and inactions.

171.     Defendants' conduct, practices, and inactions evidence their reckless disregard for SCWSA's property.

172.     SCWSA is informed and believes that it is entitled to a judgment against Defendants, jointly and severally, for compensatory damages as well as punitive damages, and the costs and legal fees associated with this action.

## FOR A FIFTH CAUSE OF ACTION
### FAILURE TO WARN

173.     SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

174.     At various times, all Defendants knew, or reasonably should have known, the danger of supplying and or using a man-made synthetic chemical that was environmentally persistent, bioaccumulative and toxic that was otherwise impervious to all conventional methods of filtration and pollution removal.  Given the extent of the risks associated with PFAS to potentially harm human health and pollute the environment, all Defendants had a duty to warn of the harm that would have occurred by releasing PFAS chemicals into the environment through manufacturing wastewater and/or stormwater.  This duty extended to SCWSA because it was

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

foreseeable, and in fact known, by Defendants that publicly operated treatment works could not remove the pollutants from wastewater and in turn would be released into the environment.

175.     Defendants breached their duty to warn, and as a direct and proximate result of this breach, SCWSA has sustained damages.

176.     Defendants for decades sold PFAS chemicals to textile mills and other businesses and/or used PFAS chemicals in South Carolina without adequate warnings of the environmental and human health dangers associated with their products, which includes danger to human health, environmental persistence, bioaccumulation, and high mobility in water bodies. Defendants knew that PFAS tainted wastewater or sludge could not be properly disposed of without sophisticated pretreatment equipment and when discharged to a public sewer system, a publicly owned water treatment facility, and/or directly into the environment, the result would be pollution of drinking water.

177.     In fact, Defendants knew that their own manufacturing wastewater containing PFAS, and sludge built up in their treatment facilities, should not be discharged and could not be discharged to conventional water treatment facilities because these dangerous chemicals would be "passed through" to public waterways causing great public harm.

178.     Defendants knew that their PFAS polluted wastewater and PFAS polluted sludge had to be incinerated and not released into the environment in order to avoid the widespread PFAS contamination. Despite this knowledge, Defendants breached their duty to warn of the dangers associated with PFAS from the anticipated disposal of PFAS wastewater or sludge without adequate warnings of the hazard and instructions as to how the contamination could be avoided through the proper sophisticated filtration, incineration, collection, and transport of the pollutants to a certified treatment facility.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

179.    Defendants have also failed to warn about the presence of PFAS in their products and wastewater, representing their products as free of PFAS and or safe for use, when in fact their products did contain PFAS and were not safe for ordinary use.

180.    As a result of the Defendants' negligent failure to warn, the drinking water has been polluted with PFAS.  The harm caused by the Defendants was done maliciously and with knowledge, to a high degree of probability, and with reckless indifference to the consequences of their actions, has harmed SCWSA.

181.    As a direct and proximate result of the conduct of the Defendants, SCWSA must build sophisticated drinking water treatment facilities that will cost millions of dollars in order to meet the MCLs promulgated by the EPA.  As a result of the PFAS contamination caused by the Defendants, SCWSA will incur millions of dollars of compensatory damages, and other damages to be proved at trial including punitive damages.

**FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**("SCUTPA")**
**S.C. Code Ann. § 39-5-10 *et seq.***

182.    SCWSA incorporates all prior paragraphs by reference as if fully set forth and restated herein.

183.    Despite knowing that their PFAS is persistent in the environment and is bioaccumulative, despite knowing that conventional filtration systems are incapable of removing PFAS from environmental media, and despite knowing  that users including SCWSA would be incapable of removing PFAS from their water supply and wastewater effluent, Defendants unfairly disposed of these chemicals in surface waters and downstream water systems—including SCWSA's drinking water and wastewater—in their ordinary and regular use without informing SCWSA of any known or potential hazards.

38

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

184.    Defendants' intentional and voluntary acts in manufacturing, supplying, using, and/or discharging PFAS and/or products and waste containing or degrading into PFAS, with full knowledge that these toxins would contaminate SCWSA's drinking water supply, constitutes an unfair and deceptive act that offends public policy, is substantially injurious to SCWSA and its consumers, and was known to plausibility mislead any reasonable person.

185.    As a direct and proximate result of Defendants' conduct, SCWSA must build sophisticated drinking water treatment facilities that will cost millions of dollars in order to meet the Health Advisories promulgated by the United State Environmental Protection Agency. As a result of the PFAS contamination caused by Defendants, SCWSA will incur millions of dollars of compensatory damages, and other damages to be proved at trial including punitive damages.

186.    Defendants' conduct, actions, and/or omissions, individually and/or as agents one for the other, by and through their agents, servants, and/or employees, as set out in detail above, violate the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140.

187.    Defendants' conduct, actions, and/or omissions, as set out in detail above, have been and continue to be repeated in South Carolina.

188.    Defendants' conduct, actions, and/or omissions, as set forth above, constitute unfair and/or deceptive trade practices and are capable of repetition, and in fact have been repeated by Defendants on a regular basis.

189.    Defendants' conduct was willful, and Defendants knew or should have known that its conduct violated the South Carolina Unfair Trade Practices Act.

190.    As a result of Defendants' actions, SCWSA is entitled to actual damages, treble damages, and attorneys' fees and costs.

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

## **PRAYER FOR RELIEF**

WHEREFORE, SCWSA respectfully requests this Court grant the following relief:

a)      Award SCWSA damages in an amount to be determined by a jury sufficient to compensate SCWSA for past and future damages;

b)      Award treble damages pursuant to the South Carolina Unfair Trade Practices Act;

c)      Award punitive damages;

d)      Award prejudgment interests for any costs or damages incurred by SCWSA;

e)      Award attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

f)      Award such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted this 13th day of January 2025.

<div style="margin-left:40%">

*s/Amy L.B. Hill*
Amy L.B. Hill, SC Bar No.: 68541
William C. Lewis, SC Bar No.: 101287
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
T: 803-281-8150
F: 803-632-8263
amy@richardsonthomas.com
will@richardsonthomas.com

and

Lee T. Patterson
*(pro hac vice admission pending)*
Ethan R. Wright
*(pro hac vice admission pending)*
Carmen V. Paige
*(pro hac vice admission pending)*
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242

</div>

40

ELECTRONICALLY FILED - 2025 Jan 13 11:22 AM - SALUDA - COMMON PLEAS - CASE#2025CP4100007

T: 205-278-7057
F: 205-278-7001
lpatterson@friedman-lawyers.com
ewright@friedman-lawyers.com
cpaige@friedman-lawyers.com

*Attorneys for Plaintiff Saluda County Water &*
*Sewer Authority*